NANNIE M. COLLINS ET AL V. SARAH E. HALL ET VIR ET AL.

No. 8086.  Decided July 21, 1943.
Rehearing overruled.October 13, 1943.
(174 S. W., 2d Series, 50.)

*Oswalt & Hollars,* of Vernon, for Mrs. Collins, *L. B. Bonner,* of Vernon, for S. B. Halford, both petitioners.

The Court of Civil Appeals erred in deciding this case on theories not plead or proved as a defense by respondents in either the court below or in the Court of Civil Appeals, in that, it has held that the evidence and the record disclosed that the trust relied on in petitioners pleadings disclosed an illegal and fraudulent transaction and no judgment could be sustained on the same. Kerr v. Hutchins, 46 Texas 384; Choate v. San Antonio & A. P. Ry. Co., 44 S. W. 69; Sullivan v. Fant, 110 S. W. 507.

*J. Shirley Cook* and *A. J. Storey,* both of Vernon, for respondent.

Under the facts and the evidence the court did not err in refusing to peremporily instruct the jury to return a verdict in favor of defendants. Miller v. Miller, 283 S. W. 1085; Hale v. Hollon, 39 S. W. 288; 39 Cyc. 282; 42 Tex. Jur. 654.

MR. JUDGE TAYLOR, of the Commission of Appeals, delivered the opinion for the Court.

This suit arose out of a controversy between the four children of Mrs. Lillie Halford who died intestate in 1935. The controversy concerns 800 acres of land in Wilbarger County, which juries have twice found, in effect, to be the joint inheritance of the children from Mrs. Halford, their widowed mother. The litigants, the four children, are Mrs. Nannie Mae Collins, a widow, Mrs. Sarah Elizabeth Hall (married to W. M. Hall, a pro forma party), J. B. (Johnnie) Halford and S. B. (Britt) Halford. The mother about two years before her death deeded a quarter section of the land (the E 1/4th of section No. 44, Block 12, H. & T. C. Ry. Co. Survey) to Mrs. Hall, and, on the same date, three quarter sections (the E 1/2 and SE 1/4th of section No. 45 of the same block) to Johnnie, reciting the consideration in each deed to be one dollar and love and affection. Prior to the two conveyances referred to the mother had conveyed to the First State Bank of Vernon a quarter section,

hereinafter called the home place, to further secure a debt of about $5,000.00, which Britt owed the bank. About two years before the mother conveyed the four quarter sections to Mrs. Hall and Johnnie, Mrs. Collins left Wilbarger County and did not return until 1937, her whereabouts in the meantime being unknown, Mrs. Hall and the brothers believing her to be dead.

Mrs. Collins after her return to Wilbarger County sued Mrs. Hall and her two brothers for cancellation of the deeds made by the mother to Mrs. Hall and Johnnie, and for her undivided one-fourth interest in the lands conveyed thereby, alleged to have been owned by the mother at the time of her death and held in trust for her and her estate by the grantees in the two deeds. The suit has been twice tried, the present appeal being from the second trial. It is necessary to refer to the allegations, proceedings and result of the first trial, notwithstanding there is little different between the pleadings and jury findings in the two. See the opinions of the Court of Civil Appeals, the first, 151 S. W. (2d) 338; the second, 167 S. W. (2d) 210.

Mrs. Collins alleged that at the time of her mother's death she (the mother) owned as her separate estate the 640 acres deeded by her in trust to Mrs. Hall and Johnnie. Mrs. Collins alleged that in February, 1936, the year following the death of her mother, Mrs. Hall was duly appointed administratrix of the mother's estate and has continuously acted as such and has received, and still is receiving, all the moneys and income from the estate, the several amounts being unknown to plaintiff. She further alleged that shortly prior to the time the mother acquired the 640 acres (January 16, 1933) dissension arose between Mrs. Hall and Johnnie on the one hand and Britt on the other over the manner in which Britt was assisting his mother in the management of her property, Mrs. Hall and Johnnie contending that he was receiving more than his part and that if not prevented from further participation in the management he would continue to acquire more than his portion; that in order to hold the estate intact, Mrs. Hall, Johnnie and Britt entered into an arrangement among themselves whereby the mother should execute the deeds to Mrs. Hall and Johnnie conveying to them the 640 acres, with the understanding that they respectively hold the lands in trust for the sole use and benefit of the mother and her estate; that thereafter the mother, on January 16, 1933, did execute and deliver the deeds to them for the purpose stated, which deeds were of record in the deed records of Wilbarger County; that the mother, after the execution of the deeds, continued to occupy, control and manage the lands up to

the time of her death in 1935. Mrs. Collins alleged that about April, 1931, some two years before the execution of the deeds referred to, she left home and knew nothing of her mother's death until a few days before returning in 1937. She also alleged that it was further agreed by defendants in connection with the execution of the deeds that if she (plaintiff) was still living she was to receive her portion of the estate, and if deceased, her children were to receive such portion. She further alleged that she had not received any portion of the estate. Mrs. Collins also alleged that Mrs. Hall had failed and refused as executrix to inventory, appraise and list the 640 acres as property belonging to the mother's estate; that she was wrongfully withholding same from inventory and that the grantees named in the deeds were since her return asserting claims to all right, title and interest in and to the lands conveyed thereby. She further alleged, upon information and belief, that if mistaken as to the above facts, then at the time her mother executed and delivered the deeds the grantees agreed to execute and deliver to the mother deeds reconveying the lands to her. She prayed for removal of the cloud cast upon her interest in the lands by the above deeds, for the cancellation thereof, and for her undivided one-fourth interest in the lands.

Mrs. Hall and Johnnie answered by general demurrer and general denial and special pleas respectively of limitation as against Mrs. Collins' prayer for cancellation.

Britt made common cause with his sister, Mrs. Collins, and filed, in addition to his answer, a cross action against Mrs. Hall and Johnnie, making substantially the same allegations that Mrs. Collins made against the three. He alleged also that he became indebted to the First State Bank at Vernon for about $6,000.00 which was secured by a mortgage on certain real estate owned by him and that the bank desiring further security, his mother signed his note as surety and further secured its payment by giving the bank a deed of trust on the home place; that he reduced the amount of the indebtedness and obtained a loan from Miss Mary Schmoker whereby she took over the bank's loan and extended the time of payment. He also alleged that before the Schmoker loan was obtained Mrs. Hall, then administratrix, required him, as a part of that transaction, to convey to her his one-fourth interest in the home place; that he received no consideration for the conveyance of his interest to Mrs. Hall, the agreement being that she would reconvey the same to him upon his payment of the Schmoker indebtedness; that the Schmoker debt was a just charge against his interest

in his mother's estate, but that he was not otherwise indebted to the estate than as confessed by him. He prayed for cancellation of the deed to Mrs. Hall and Johnnie; also for cancellation of his deed to Mrs. Hall of his one-fourth interest in the home place; that the land he declared to be the property of the estate of his mother *and inventoried as such, and for partition of the estate with an accounting.*

(It is pointed out in this connection that the evidence discloses an application made by the administratrix to renew and extend the bank's loan, and that same was transferred to Miss Schmocker, and that Mrs. Hall, though Britt's deed was made to her personally, claims to have received it as administratrix only; also that Mrs. Hall made payments as administratrix to Mrs. Collins for her support, and that she, as administratrix, paid out other moneys for Britt in arranging the payments and transfer to Miss Schmoker of his debt to the bank. It is pointed out also that the court did not undertake to adjudicate the matters relating to an accounting and the partition and distribution of the estate; and that, as will presently appear, relief of this nature was specifically denied "without prejudice.")

The jury found upon the second trial, among other things, that prior to the time the mother deeded the land in controversy to Mrs. Hall and Johnnie, Britt and the two grantees had agreed that the grantees were "to hold the land for the benefit of all the children of Mrs. Lillie Halford in equal shares"; also that while it was agreed that deeds reconveying the lands to the mother would be executed and delivered to her by the grantees, they were never executed. Upon the jury verdict the court rendered judgment for cancellation of all the deeds, including the deed from Britt to Mrs. Hall, and awarding a one-fifth interest of whatever Mrs. Collins' recovery was, in favor of her attorney, W. D. Hollars.

Upon appeal by Mrs. Hall and Johnnie the Court of Civil Appeals reversed and remanded the case because of error on the part of the trial court in permitting Britt to testify in violation of article 3716 R. C. S. 1925, to conversations and transactions between him, Mrs. Hall and Johnnie with reference to their alleged agreement with the mother.

The Court of Civil Appeals in its opinion on the first appeal of the case approved as a valid ground of recovery a theory within the allegations of Mrs. Collins and Britt to the effect that the land in controversy, if found to be owned by the mother

at the time of her death and held in trust for her estate, should be decreed, upon cancellation of the deeds, to be the property of the estate and subject to partition as such, in event it should further be found that Mrs. Hall and Johnnie had no interest in the land other than as heirs of the mother. It was also within the allegations of Mrs. Collins and Britt upon the first trial that Mrs. Hall and Johnnie had executed deeds of reconveyance to the mother as a basis of recovery.

■ Upon "refusal" of a writ of error by this Court upon application of Mrs. Hall and Johnnie from the first judgment of the Court of Civil Appeals, the cause was reversed and remanded and again tried, because of the error in the admission of testimony as pointed out above. Upon retrial and a second appeal by Mrs. Hall and Johnnie from an adverse judgment, the Court of Civil Appeals held that the agreement for reconveyance by Mrs. Hall and Johnnie to the mother of the 640 acres (no reconveyance having been made) was eliminated from the case as a basis of recovery, since the agreement, being oral, was in violation of the statute of frauds, citing article 3995, R. C. S., Allen v. Allen et al, 101 Texas 362, 107 S. W. 528, and Whittenburg v. Miller, 164 S. W. (2d) 497. The holding was correct. That theory of recovery, however, was pleaded by Mrs. Collins and Britt on the second trial only in the alternative, the primary theory being that, in effect, that which was approved by the Court of Civil Appeals upon the first appeal of the case. Writ of error, as pointed out above, was rfused by this Court. The theory approved was substantially, as stated above, that in event the mother was the real owner of the property involved and died seized and possessed thereof, and Mrs. Hall and Johnnie had no interest therein other than "by virtue of heirship," then the property upon the mother's death would descend to the four children, they being her only heirs.

Special issues were submitted upon the second trial, apparently under both the primary and alternative theories incorporated by Mrs. Collins and Britt in their pleadings. The jury eliminated the alternative theory pleaded by finding the deeds of reconveyance were not executed by Mrs. Hall and Johnnie. It was further found that prior to the execution of the respective deeds by these grantees they agreed to hold the 640 acres described therein "for the benefit of the four children in equal shares." The jury found also *that neither Mrs. Hall nor Johnnie claimed the land as their own respectively against all persons subsequent to the execution of the deeds to them by the mother.* It is undisputed that the conveyance by Britt to Mrs.

Hall was to further secure the indebtedness represented by the Schmoker loan, which Britt admitted in his pleadings he owned individually.

Upon the foregoing facts the trial court rendered judgment to the effect that Britt's conveyance to Mrs. Hall be cancelled upon payment by him of the Schmoker indebtedness; that the deeds by the mother to Mrs. Hall and Johnnie be cancelled and held for naught "as conveyances of the fee simple title" to the grantees therein. While the decree is not clearly worded it is obvious that the trial court intended to adjudge and, in effect, did adjudge, that each of the four children were heirs alike of the mother's estate, the partition and distribution thereof to be made by the probate court in winding up the administration proceedings then pending in that court. W. D. Hollars was decreed a one-fifth interest in and to the interest recovered by Mrs. Collins in the estate. Such intention and adjudications appear from the pleadings of the parties and the findings, and from the judgment recitals, including the recital that the relief prayed for by way of accounting and partition was denied "without prejudice." In other words the trial court, after decreeing cancellation of the deeds from the mother to Mrs. Hall and Johnnie, and from Britt to Mrs. Hall, and decreeing the equality of interest of the four children as the heirs of the mother, took cognizance of the proceedings of the probate court in the matter of the final inventory of the property belonging to the mother's estate and the list of claims with which the estate and the respective interests therein are properly chargeable prior to partition and distribution. In brief, the trial court, without doing so in express terms, in effect certified its judgment to the probate court for observance.

The Court of Civil Appeals in view of the conclusion reached by it with respect to the purpose of the conveyances by the mother to Mrs. Hall and Johnnie, presently to be referred to, reversed the trial court's judgment (except that portion thereof decreeing Britt's deed to Mrs. Hall was a mortgage and that it be cancelled when he paid the Schmoker debt, which was affirmed) and rendered judgment that Mrs. Collins and Britt and Attorney Hollars take nothing by the suit. The conclusion of the Court of Civil Appeals above referred to was that the purpose of the conveyances of the mother to Mrs. Hall and Johnnie was to avoid subjecting the 640 acres of land conveyed to them to the payment of Britt's debt to the bank; that the agreement for such purpose, and the conveyances made pursuant thereto, was repugnant to public policy and that the parties should be granted

no relief. This conclusion was the basis of the Court of Civil Appeals judgment.

We are not in accord with the conclusion and the judgment based thereon. The respondents, Mrs. Hall and Johnnie, made no contention to this effect in the courts below nor in their brief filed in the Court of Civil Appeals. No such theory was advanced by the pleadings and no issue predicated on such contention, was tried by the litigants. Nor was any creditor of the estate before the court. The evidence shown by the statement of facts of the proceedings in the probate court in the pending administration discloses that the bank's debt had been paid to it upon its transfer by the bank to Miss Schmoker, and that payment of the Schmoker debt is contemplated by the administratrix.

Writ of error was granted upon the point alleging the error of the Court of Civil Appeals in its conclusion. Upon full consideration of the case we adhere to the view entertained by us in granting the writ.

■ Upon examination of the brief of respondents filed in the Court of Civil Appeals to ascertain if any assignment of error is presented upon which the judgment of that court reversing and remanding the case can be upheld, we find none. The principal assignment alleges a lack of testimony to sustain the finding of the jury that the conveyances by the mother were made to the grantees in trust for the four children. We overrule the assignment. There was evidence to sustain the finding that neither of the grantees in the conveyances claimed the lands deeded to them as their own against all persons after the deeds were executed. The evidence tends also to establish the alleged purpose of the conveyances by the mother to Mrs. Hall and Johnnie. There was testimony also by Britt detailing conversations with Mrs. Hall and Johnnie that tend to support the alleged trust character of the conveyances. Britt testified that the grantees told him the mother would make deeds to them "for the benefit of the Halford estate, Nannie Mae Collins, Johnnie Halford and Sarah Elizabeth Hall and myself"; and that soon thereafter the deeds were executed by the mother and were recorded. Britt, according to his testimony, had no agreement with the mother about it, but only with Mrs. Hall and Johnnie. The deeds were executed reciting consideration of one dollar and love and affection, and the grantees, according to the findings of the jury, recorded same and did not thereafter claim the land as their own "against all persons"; also it is undisputed that the mother after executing the deeds remained in possession, control and

management of the property, as before, until her death some two years later.

The findings of the jury that the grantees in the mother's deeds did not claim the lands conveyed to them adversely against all persons, disposes of the limitation pleas of Mrs. Hall and Johnnie, and the points alleged by them relating thereto.

The effect of the holdings stated is to dispose of the remaining points in the brief of respondents filed in the Court of Civil Appeals, which are hereby overruled.

The judgment of the Court of Civil Appeals is reversed and that of the trial court, as herein interpreted, is affirmed.

Opinion adopted by the Supreme Court July 21, 1943.

Rehearing overruled October 13, 1943.